995 A.2d 1242 (2010)
COMMONWEALTH of Pennsylvania
v.
Robert TOLAND, II, Appellant.
No. 3211 Eastern District Appeal 2008.
Superior Court of Pennsylvania.
Submitted September 28, 2009.
Filed May 25, 2010.
*1243 Alessandro Giribaldi, Media, for appellant.
George M. Green, Asst. Dist. Atty., and Michelle P. Hutton, Asst. Dist. Atty., for Com., appellee.
BEFORE: FORD ELLIOTT, P.J., STEVENS and DONOHUE, JJ.
OPINION BY FORD ELLIOTT, P.J.:
¶ 1 Robert Toland, II, appeals from the judgment of sentence of October 20, 2008, following his conviction of driving under the influence ("DUI"). On appeal, appellant challenges the sufficiency of the evidence to support the conviction, specifically arguing that the Commonwealth failed to prove he was in actual physical control of the vehicle. Appellant also contends that he should have been awarded credit against his sentence for time spent in inpatient alcohol rehabilitation. After careful review, we affirm.
¶ 2 Following an incident on September 14, 2006, when appellant was found passed out behind the wheel of his car with the headlights on and the engine running, appellant was charged with DUIhighest rate of alcohol,[1] and driving without a license as a summary offense.[2] Appellant proceeded to a stipulated bench trial before the Honorable Chad F. Kenney, following which he was found guilty of the above offenses.[3] On October 20, 2008,[4] appellant was sentenced to the mandatory minimum of 12 to 24 months' imprisonment for DUI,[5] followed by 3 years' probation and a fine of $2,500. No further penalty was imposed for the summary offense of driving without a license.
¶ 3 Post-sentence motions were denied, including appellant's motion for bail pending appeal and for time credit. A timely notice of appeal was filed on November 17, 2008. Appellant has complied with Pa. R.A.P. 1925, and the trial court has filed an opinion.[6]
*1244 ¶ 4 Appellant presents the following issues for this court's review:
1. Is an individual guilty of driving under the influence of alcohol in Pennsylvania when: (a) he or she enters a vehicle under the influence of alcohol and starts the engine for heat or air conditioning; but (b) there is absolutely no "additional evidence" that supports an inference that the vehicle had been driven or moved by the individual when he or she was intoxicated?
2. Is a defendant entitled to "credit for time served" for time spent in intensive inpatient alcohol treatment centers when the treatment was undertaken pursuant to court order as a condition of bail?
Appellant's brief at 5 (emphasis in original).[7]
¶ 5 The parties stipulated to the facts as set forth in the affidavit of probable cause. Those facts are as follows.
On September 14, 2006 at approximately 0052 hours, I, Ptlm. Todd M. Welch of the Newtown Township Police Department was on routine patrol in the area of W. Chester Pike and S. Newtown Street Road. At that time my attention was drawn to a vehicle which appeared to be stationary in front of the Niemeyer's store which is located in the unit block of S. Newtown Street Road (Rt252). When I pulled along side of the vehicle I observed a male subject in the driver[']s seat, he appeared to be sleeping. I parked my patrol vehicle and approached the vehicle, a dark colored BMW bearing PA registration DGJ5728. I observed the vehicle's engine was running, the headlamps were illuminated and the driver was the sole occupant of the vehicle. At this time I was assisted by Officer David Felker of the Easttown Township Police Department. I approached the driver[']s side window and knocked several times. Since the knocks did not rouse the driver I opened the car door and shook the driver, later identified as [appellant]. [Appellant] came to, however he still seemed somewhat confused. I inquired if he was a diabetic and he said he was not. I asked him for identification and he exited the vehicle. When he stood up he was very unsteady on his feet and had difficulty walking. He seemed as if he was going to retrieve his license from the back seat or trunk, however he never did, so I asked him to have a seat back in the vehicle. He never did produce his license or offer an excuse as to why he did not. [Appellant] provided me with his name and date of birth. I went back to my patrol vehicle to verify the information was correct. At that time I learned [appellant's] PA license is currently recalled. According to the Penndot certified record [appellant's] license was recalled for general medical reasons. Official notice of the recall was mailed May 24, 2006 and his license was received by Penndot on June 20, 2006.

*1245 I exited my patrol vehicle and reapproached [appellant]. I asked him to exit his vehicle and walk to the rear of his vehicle. When [appellant] exited his vehicle he stumbled forward and bumped into me. At that time I could smell an odor of an alcoholic beverage about his breath. I asked [appellant] if he knew his license was recalled and he acknowledged he was in fact aware of the status of his license. I asked [appellant] to perform a breath test and the result of that test was .306%[.] Next I asked [appellant] about his academic background, he advised me he graduated law school. I asked him to recite the alphabet and he stopped at the letter "P" and then said "etc, etc, etc[.]" He could not finish the alphabet after "P". [Appellant's] speech was slurred throughout the incident and even more so during the alphabet recital.
At that point I placed [appellant] under arrest for DUI. After he was placed in the patrol vehicle I went back to his vehicle and secured a brown bag that I had observed earlier in the incident. The brown bag was located on the floor behind the driver[']s seat, it contained a six pack of beer. The beer appeared to have been recently purchased as it was still cold. All of the beer in the six pack was still capped.
I transported [appellant] to Riddle Hospital. I read [appellant] the Chemical Test Warning and he advised me he would submit to the test. In my presence RN Christina Wilson withdrew three vials of blood from [appellant's] left arm. She subsequently handed me the three vials of blood and I transported [appellant] back to the Newtown Police Station. [Appellant] was processed and transported to the Media Borough Police Department for overnight lodging. The blood evidence as well as the beer removed from [appellant's] vehicle was placed into evidence. The blood will be sent out to a certified lab for BAC testing purposes.
Affidavit of probable cause, 9/14/06 at 1-2. It was stipulated that chemical testing revealed a BAC of greater than .3%. (Notes of testimony, 6/5/08 at 12.)
A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
Commonwealth v. Brotherson, 888 A.2d 901, 904 (Pa.Super.2005), appeal denied, 587 Pa. 719, 899 A.2d 1121 (2006), quoting Commonwealth v. Williams, 871 A.2d 254, 259 (Pa.Super.2005) (citations and quotation marks omitted).
¶ 6 Appellant was convicted of DUI under Subsection (c), which provides:
(c) Highest rate of alcohol.An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated *1246 or been in actual physical control of the movement of the vehicle.
75 Pa.C.S.A. § 3802(c).
"The term `operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." Commonwealth v. Johnson, 833 A.2d 260, 263 (Pa.Super.2003). "Our precedent indicates that a combination of the following factors is required in determining whether a person had `actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle." Commonwealth v. Woodruff, 447 Pa. Super. 222, 668 A.2d 1158, 1161 (1995). A determination of actual physical control of a vehicle is based upon the totality of the circumstances. Williams, supra at 259. "The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle." Johnson, supra at 263.
Brotherson, 888 A.2d at 904-905.
¶ 7 Here, the evidence established that appellant was asleep in the driver's seat of the vehicle with the motor running and the headlights illuminated. There was a cold, unopened six-pack of beer on the floor behind the driver's seat. Niemeyer's is described in the affidavit of probable cause as a "store" and there is no indication that it sells alcoholic beverages. A reasonable inference could be made that appellant drove to that location. Although circumstantial, the evidence was sufficient for the trial court to conclude, as the finder of fact, that appellant was in actual physical control of the movement of the motor vehicle. See Williams, 871 A.2d at 257-262 (Commonwealth proved defendant was in actual physical control of the vehicle where police found him parked outside a restaurant at 4:00 a.m., asleep in the driver's seat with his hands on the wheel and his head resting on his hands; the engine of the vehicle was running, the radio and headlights were on, and the transmission was in park position).
¶ 8 Appellant relies on Commonwealth v. Byers, 437 Pa.Super. 502, 650 A.2d 468 (1994). In that case, the defendant was discovered sleeping in the driver's seat of a parked car. Id. at 468-469. The car was sitting in the parking lot of the Twin Rocks Lounge, a drinking establishment. Id. The engine was running and the headlights were on, but the car was not in motion. Id. at 469. On these facts, a panel of this court held that the Commonwealth did not introduce enough evidence to show actual physical control. We held that the Commonwealth must show some additional facts to demonstrate that an intoxicated defendant is a danger to public safety beyond merely starting a parked car. Id. at 470. After noting that the purpose of the drunk driving laws is to keep intoxicated drivers off of the road and to protect the public at large, the Byers court stated: "In the present case, Byers never got onto the road and was not a threat to public safety. The Commonwealth is trying to encourage intoxicated people to `sleep it off' before attempting to drive, yet it wants us to punish Byers for doing just that." Id. at 471.
¶ 9 While not overruled, the approach in Byers was strongly criticized by the Pennsylvania Supreme Court in Commonwealth v. Wolen, 546 Pa. 448, 685 A.2d 1384 (1996) (plurality):
Under the circumstances of that case, the Superior Court held that there were insufficient facts to prove that the defendant posed a safety hazard to the public, and therefore the Commonwealth had failed to establish that he was in actual *1247 physical control of the vehicle. [Byers], 650 A.2d at 470. The Byers Court reasoned that penalizing a person for "sleeping it off" with the engine running for a purpose other than driving the vehicle (for example, to provide heat, operate the radio or power a car phone) would defeat this laudable purpose. [Id.] at 471. However, nowhere in the statute is there a requirement that the fact-finder should consider whether or not one in actual physical control of a vehicle and under the influence of alcohol or controlled substances poses a threat to public safety. The legislature has reasonably determined that one driving a motor vehicle on the public streets and highways of the Commonwealth while under the influence of alcohol or controlled substances constitutes a threat to public safety per se, even if there are no other members of the public immediately endangered. While it may be laudable that one who realizes that he is incapable of safe driving pulls over to "sleep it off," the legislature has made no exception to the reach of the statute to such individuals. Accordingly, such a person's threat to public safety is not a relevant consideration under the drunk driving statutes.
Wolen, 546 Pa. at 452 n. 4, 685 A.2d at 1386 n. 4. Although Wolen, as a plurality decision, is not binding on this court, the soundness of the reasoning in Byers has been called into question.
¶ 10 At any rate, Byers is distinguishable on its facts. In that case, the defendant had not moved his car from the private parking lot of the bar where he had been drinking. Byers, 650 A.2d at 470. Here, appellant was parked on a public street in front of a store. While it is unclear from the record where appellant had been drinking prior to his arrest, appellant was not sitting in the parking lot of a bar, as in Byers. As the trial court states, the presence of a cold, unopened six-pack of beer in appellant's car indicates that he was not "sleeping it off" but intended to drive his vehicle to his home or some other location to continue drinking and become even more intoxicated. (Trial court opinion, 2/3/09 at 13-14.) Assuming Byers remains good law, it is factually inapposite and appellant's reliance on it is misplaced. Appellant's sufficiency claim fails.
¶ 11 In his second issue on appeal, appellant argues that he is entitled to credit of 354 days,[8] for time spent in inpatient alcohol treatment. We disagree.
¶ 12 The facts relevant to this claim are as follows. The magisterial district judge provided in the current bail information dated September 14, 2006, that appellant "shall enter and complete [a] comprehensive in-patient alcohol/drug treatment program." (Docket No. 1.) Two weeks after appellant's arrest for DUI and his subsequent release on bail, appellant was arrested again, this time for public drunkenness. According to appellant, this arrest occurred on September 28, 2006, after appellant's realtor, who was showing his home that day at an "open house," found him highly intoxicated and drove him to a bar *1248 to get him out of the house. (Affidavit of Robert Toland, II, 5/29/08 at 6, ¶ 24.) Due to appellant's dangerously high blood alcohol level, he was taken to Bryn Mawr Hospital where he remained for 24 hours, strapped to a gurney. (Id.) Appellant was then transferred to Eagleville Hospital for inpatient treatment and detoxification. (Id.) Appellant remained at Eagleville for one week. (Id.) As stated above, appellant does not claim that he is entitled to credit against his DUI sentence for these eight days at Bryn Mawr and Eagleville hospitals.
¶ 13 In October 2006, appellant referred himself for further inpatient treatment at Hazelden Springbrook ("Hazelden") in Newberg, Oregon. (Id. 1125.) Appellant had treated at Hazelden in the past. (Id. at 3-4, ¶ 14.) Appellant remained at Hazelden for 47 days, from October 14, 2006 to November 29, 2006. (Id. at 6, ¶ 25.) During that time, he received group care and therapy relating to his alcohol addiction. (Id.)
¶ 14 At the recommendation of Hazelden, appellant transferred to Prescott House in Prescott, Arizona, for additional inpatient treatment. (Id. ¶ 26.) Appellant remained in residential treatment at Prescott House from December 8, 2006 to October 10, 2007, totaling 307 days. (Id. at 6-7, ¶ 26.) While at Prescott House, appellant attended AA meetings and group therapy, and provided community service. (Id. at 7, ¶ 27.) Appellant characterizes Prescott House as providing intensive, residential inpatient treatment; however, eventually, appellant was permitted to get a part-time job while residing there. (Id.) Appellant avers that he has spent approximately $100,000 of his own money on alcohol rehabilitation since his DUI arrest in this case. (Id. ¶ 31.) In his affidavit of May 29, 2008, appellant avers that he entered treatment voluntarily in an effort to combat his alcohol addiction:
I did not enter this treatment after my arrestor any previous in-patient or out-patient treatmentto avoid going to jail for this DUI or the previous one. I did it voluntarily and I did it to save my life because I am an alcoholic and I needed long-term, in-patient residential treatment to get myself into long-term sobriety.
Id. ¶ 30.[9]
Our standard of review in appeals of sentencing is well settled:
Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
Commonwealth v. Mann, 957 A.2d 746, 749 (Pa.Super.2008), quoting Commonwealth v. Ford, 947 A.2d 1251, 1252 (Pa.Super.2008) (citation omitted).
¶ 15 The Sentencing Code provides that a defendant shall receive credit for all time spent in custody prior to trial:
§ 9760. Credit for time served

*1249 (1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.
42 Pa.C.S.A. § 9760(1). "The principle underlying [Section 9760] is that a defendant should be given credit for time spent in custody prior to sentencing for a particular offense." Commonwealth v. Fowler, 930 A.2d 586, 595 (Pa.Super.2007), appeal denied, 596 Pa. 715, 944 A.2d 756 (2008), quoting Commonwealth v. Hollawell, 413 Pa.Super. 42, 604 A.2d 723, 725 (1992) (citation omitted) (emphasis deleted).
The easiest application of [42 Pa.C.S.A. § 9760(1)] is when an individual is held in prison pending trial, or pending appeal, and faces a sentence of incarceration: in such a case, credit clearly would be awarded. However, the statute provides little explicit guidance in resolving the issue before us now, where [the defendant] spent time [somewhere other] than in prison. This difficulty results in part from the fact that neither Section 9760, nor any other provision of the Sentencing Code, defines the phrase "time spent in custody." The difficulty is also a function of the fact that there are many forms of sentence, and many forms of pre-sentencing release, which involve restrictions far short of incarceration in a prison.
Id. at 595-596, quoting Commonwealth v. Kyle, 582 Pa. 624, 632-633, 874 A.2d 12, 17 (2005) (citation omitted). "Courts have interpreted the word `custody,' as used in Section 9760, to mean time spent in an institutional setting such as, at a minimum, an inpatient alcohol treatment facility." Id. at 596, quoting Kyle, 582 Pa. at 634, 874 A.2d at 18.
¶ 16 Appellant relies on Commonwealth v. Cozzone, 406 Pa.Super. 42, 593 A.2d 860 (1991), for the proposition that he is entitled, as a matter of law, to 354 days of credit time for inpatient treatment at Hazelden and Prescott House. In Cozzone, the defendant was found guilty of DUI and sentencing was deferred pending disposition of post-trial motions. Id. at 861. In the meantime, Cozzone was again arrested and charged with DUI. As an explicit condition of being released on bail, Cozzone entered an inpatient alcohol treatment center where he remained for 32 days. Cozzone entered a guilty plea to the second charge of DUI. Id. On appeal, he argued that the trial court erred in failing to give him credit for the 32 days he spent in an inpatient alcohol treatment facility prior to his entering a plea of guilty to the second drunk driving offense.
¶ 17 A panel of this court agreed, and held that Cozzone was entitled to credit for time spent in residential treatment. In so doing, we emphasized that Cozzone only entered alcohol rehab to avoid going to jail, and we distinguished our supreme court's decision in Commonwealth v. Conahan, 527 Pa. 199, 589 A.2d 1107 (1991), in which the defendant voluntarily admitted himself for treatment:
After appellant had failed to appear for a preliminary hearing, a warrant was issued for his arrest. Thereafter, appellant was permitted by the District Justice to admit himself to an alcohol treatment facility in lieu of being committed to the county prison. This admission to a treatment facility was made a condition of his being released on bail. Appellant *1250 was thereafter in treatment for thirty-two (32) days.
Cozzone, 593 A.2d at 866.
In the instant case, in contrast to Conahan, appellant did not voluntarily admit himself to an alcohol treatment facility. Instead, he entered the rehabilitation facility as a condition of bail in order to avoid pre-trial imprisonment. We conclude, therefore, that the time which appellant spent as a patient in the alcohol treatment facility was "time spent in custody" within the contemplation of 42 Pa.C.S. § 9760(1). As such, he is entitled to credit therefor against the sentence of imprisonment imposed for his second offense.
Id. at 867-868.
¶ 18 In Conahan, the defendant voluntarily commenced inpatient treatment for alcoholism, which lasted for 95 consecutive days. After imposing the applicable mandatory minimum sentence of 30 days to 1 year of imprisonment, the trial court credited Conahan for his 95 days of custodial treatment and granted immediate parole. Id. at 200-201, 589 A.2d at 1108. This court reversed, finding, inter alia, that the Legislature did not intend the word "imprisonment" in the mandatory sentencing provision of the DUI statute to encompass inpatient treatment programs. Id. at 201, 589 A.2d at 1108.
¶ 19 Our supreme court reversed, holding that whether to grant Conahan credit was within the trial court's discretion. The Conahan court determined that inpatient custodial alcohol rehabilitation falls within the definition of "imprisonment," which encompasses more than just being involuntarily confined behind bars:
Conahan voluntarily committed himself to inpatient custodial alcohol rehabilitation, which he successfully completed after devoting ninety-five continuous days towards overcoming his disease. We find that his successful completion of this custodial inpatient rehabilitation, which took place in three hospitals, falls within the common meaning of "imprisonment" and is a sufficient "institutional setting" as contemplated by this Court in [Commonwealth v. Kriston, 527 Pa. 90, 588 A.2d 898 (1991)].
Id. at 203, 589 A.2d at 1109. However, the Conahan court emphasized that a defendant who voluntarily commits him/herself to inpatient treatment is not automatically entitled to time credit as a matter of law:
Clearly, our acceptance of this type of inpatient "institutional rehabilitation" in no way entitles one accused of driving under the influence of alcohol to a credit for such rehabilitative commitment as of right. Rather, it is only an express approval of credits for such commitment that the sentencing court in its discretion deems to be sufficient. Accordingly, we hold that the trial court properly sentenced Conahan to the mandatory minimum term of imprisonment, and then acted well within its discretion in awarding Conahan a credit of thirty days for time served in inpatient institutional rehabilitation and in granting him immediate parole.
Id. at 204, 589 A.2d at 1110 (emphasis in original).
¶ 20 Looking at these cases together, therefore, it seems that whether a defendant is entitled to credit for time spent in an inpatient drug or alcohol rehabilitation facility turns on the question of voluntariness. If a defendant is ordered into inpatient treatment by the court, e.g., as an express condition of pre-trial bail, then he is entitled to credit for that time against his sentence. Cozzone. By contrast, if a defendant chooses to voluntarily commit himself to inpatient rehabilitation, then whether to approve credit for such *1251 commitment is a matter within the sound discretion of the court. Conahan. See also Commonwealth v. Mincone, 405 Pa.Super. 599, 592 A.2d 1375 (1991) (en banc) (trial court may exercise its discretion in determining whether to grant defendant credit towards his mandatory minimum sentence of imprisonment for time voluntarily spent at Gateway Rehabilitation Center, an institutionalized rehabilitation facility) (discussing Conahan, supra).
¶ 21 Despite the language in the bail information set forth above, the trial court determined that appellant voluntarily checked himself into treatment at Hazelden and Prescott House. (Trial court opinion, 1/7/09 at 15.) There is ample support in the record for the trial court's determination. Appellant did not enter Hazelden until October 14, 2006, one full month after his release on bail, and after he had been re-arrested for public drunkenness and hospitalized. In fact, appellant concedes in his affidavit of May 29, 2008, that he did not enter inpatient treatment to avoid going to jail for DUI, but did it "voluntarily" to "save my life." It was only after the trial court denied him credit that appellant claimed that he had begun treatment as a condition of bail. (Affidavit of Robert Toland, II, 11/3/08 at ¶ 4; post-sentence motion, 11/3/08, Exhibit C; Docket No. 21.)
¶ 22 As the trial court notes, appellant continued his preliminary hearing numerous times in order to remain in treatment, only to ultimately waive his preliminary hearing 15 months later, when, perhaps not coincidentally, he had spent nearly one full year in residential, inpatient treatment. (Trial court opinion, 1/7/09 at 15.) As a third-time DUI offender, appellant faced a mandatory minimum sentence of one year of imprisonment. (Id.) The trial court states that it would not have granted these repeated continuances, keeping appellant's case at the district court level for an unprecedented period of time (appellant continued his preliminary hearing a total of eight times while he was "rehabbing"); however, the trial court is certain that the magisterial district judge acted in good faith and intended only to benefit appellant. (Id. at 6 n.8.)
¶ 23 Having found support for the trial court's conclusion that appellant voluntarily committed himself to residential rehabilitative treatment, we will examine whether the trial court abused its discretion in denying appellant credit. The trial court based its decision, at least in part, on the nature of appellant's treatment. The trial court found that these facilities were not custodial and did not rise to the level of "imprisonment."
¶ 24 Appellant was not restrained and was free to leave treatment at any time. (Id. at 10, 14.) The various letters from Prescott House indicate that "[appellant] has been part of our program since his voluntary intake on December 8, 2006." A letter dated May 30, 2007, from David Frey, Prescott House admissions director, to appellant's attorney, states:
In the past we have had clients in our program who were here in lieu of jail time in the hope that the therapeutic environment here would lower the chance of recidivism. We are willing to work with the court and monitor the client with random urinalysis, house confinement, peer supervision, or anything within reason that the court may suggest. We can require [appellant] give us written consent to keep the court informed of his progress and of any problems related to his treatment if that is necessary.
As the trial court states, "There is no record that any of this was ever requested and it therefore was never done." (Trial court opinion, 1/7/09 at 10.)
*1252 ¶ 25 According to these letters from Mr. Frey, appellant was permitted to do his own grocery shopping and volunteer in the community. (Id. at 7 n.9.) Appellant spent approximately 10 hours each week volunteering at the Salvation Army thrift store, a soup kitchen, Big Brothers/Big Sisters, etc. (Id.) Appellant even had a part-time job at Office Max. (Id.) In many ways, appellant's inpatient treatment at Prescott House was less restrictive than electronic home monitoring, which has been held to not qualify as "custody" for purposes of Section 9760. (Id. at 16); see Kyle, 582 Pa. at 640, 874 A.2d at 22. The trial court states, "While at Prescott House, Appellant was in an apartment-style living situation in which he did his own shopping, had a part-time job, and was free to wander about the community. There was nothing about his living arrangement at Prescott House that remotely resembles imprisonment or even custody." (Trial court opinion, 1/7/09 at 16.)[10]
¶ 26 Certainly, this was not a "custodial hospital environment" as in Conahan. Conahan at 203, 589 A.2d at 1109. The trial court describes it more as a "mile high scenic mountain getaway." (Trial court opinion, 1/7/09 at 12.) We find that appellant has failed to demonstrate an abuse of discretion in the trial court's denial of time credit for the 354 days appellant spent in voluntary inpatient alcohol treatment. Compare Fowler, supra (affirming denial of credit time where, at his own request, appellant was admitted into drug treatment court program, appellant could opt out at any time, and appellant's stay was not so restrictive as to constitute custody; e.g., appellant was not physically prevented from leaving the facility, at no time was appellant locked-down, there were no bars on the windows, perimeter fencing of the premises was for privacy and not for security purposes, and individuals there as part of the county drug court program were treated no differently than other residents).[11]
*1253 ¶ 27 In addition, we cannot ignore the trial court's cogent argument that allowing appellant credit in this case would invite defendants who can afford extended stays in inpatient rehabilitation facilities to "game the system." (Trial court opinion, 1/7/09 at 17-18.) Most defendants cannot afford to pay in excess of $100,000 and continue their cases indefinitely while they "rehab" at addiction facilities in Oregon and Arizona. The trial court states that "If this Court were to allow credit for time spent in rehab in this case, the Court could not look similarly situated defendants in the eye." (Id. at 18.) We also observe that it is a common thread throughout the trial court's opinion that appellant was purposely trying to avoid a mandatory sentence of incarceration by taking advantage of a perceived "loophole" in the law, i.e., by delaying his case and remaining in inpatient treatment until the mandatory minimum 12-month sentence had nearly expired. Such conduct should not be countenanced.
¶ 28 Certainly the trial court is in a better position to observe appellant's demeanor and decide whether his efforts were sincere and not simply a ploy to avoid the mandatory sentencing penalties for repeat DUI offenders. The trial court did note that:
This Court does not mean to diminish or demean Appellant's efforts to seek and follow through with pre-trial treatment or his selection of a treatment facility for his illness or his capacity to pay for this treatment. It takes a certain amount of personal courage after hitting rock bottom to awake to the awareness of your illness and the havoc it has wreaked upon your life and the lives of those who were closest to you and to finally take steps to address the illness.
Id. at 6 n.7.
¶ 29 Having determined that the evidence was sufficient to support the verdict, and that the trial court did not abuse its discretion in declining to award appellant credit for time he voluntarily spent in inpatient alcohol rehabilitation, we will affirm the judgment of sentence.
¶ 30 Judgment of sentence affirmed.
NOTES
[1] 75 Pa.C.S.A. § 3802(c).
[2] 75 Pa.C.S.A. § 1501.
[3] Appellant turned down an offer of state intermediate punishment ("IP"). (Notes of testimony, 6/5/08 at 3, 5-7.)
[4] Trial was held on June 5, 2008, and the trial court's verdict was entered on June 18, 2008. Sentencing was delayed because on June 15, 2008, appellant fell off a 12-foot retaining wall, resulting in serious injuries. (Notes of testimony, 10/20/08 at 15-16.)
[5] This was appellant's third DUI offense within the last 10 years. 75 Pa.C.S.A. § 3804(c)(3); 75 Pa.C.S.A. § 3806(b).
[6] On December 5, 2008, this court temporarily stayed appellant's sentence and directed the trial court to reconsider its order denying bail pending appeal. Commonwealth v. Toland, No. 3211 EDA 2008, per curiam order (Pa.Super. filed December 5, 2008). We also directed the trial court to conduct an in-depth analysis of whether appellant is entitled to credit for time served for days spent receiving inpatient alcohol rehabilitation treatment, allegedly as a condition of pre-trial bail. Id. On January 7, 2009, the trial court filed an opinion in response to this court's per curiam order, again denying bail and finding that appellant is not entitled to credit for the 362 days he spent at various treatment facilities. On February 3, 2009, the trial court filed a Rule 1925(a) opinion addressing the remaining issues raised in appellant's concise statement of errors complained of on appeal.
[7] Additional issues raised in appellant's Rule 1925(b) statement have been abandoned on appeal.
[8] Originally, appellant requested credit for 362 days. Appellant now concedes that eight days, representing his hospitalization at Bryn Mawr and Eagleville hospitals, are not creditable. (Appellant's supplemental brief at 4.) Appellant was admitted to Bryn Mawr on September 28, 2006, following his arrest for public drunkenness in an unrelated incident. (Id. at 3; notes of testimony, 10/20/08 at 10-11.) Appellant remained at Bryn Mawr Hospital for 24 hours and was then transferred to Eagleville Hospital for detoxification. (Notes of testimony, 10/20/08 at 10-11.) Appellant concedes that these eight days are unrelated to any bail condition imposed in this case.
[9] Appellant executed a second affidavit on November 3, 2008, after he was denied time credit by the trial court, in which he avers that "Until just three or four days ago, I had forgotten that this long-term, intensive treatment beganand continued for such a long period of timeas a condition of bail that was set by the Court following my arrest in September of 2006." (Affidavit of Robert Toland, II, 11/3/08 at 1, ¶ 4.)
[10] There is much more information in the record concerning Prescott House than Hazelden, where appellant resided from October 14, 2006 until November 24, 2006. Regarding Hazelden, while appellant testified that "you weren't free to, you know, leave the campus or travel about," he did not elaborate. (Notes of testimony, 10/20/08 at 12.)
[11] We note that according to the trial court, it did not have the option of imposing any form of IP, such as placement in a residential inpatient drug or alcohol treatment program, because appellant was subject to a mandatory sentence of imprisonment pursuant to 75 Pa. C.S.A. § 3804(c)(3). (Trial court opinion, 1/7/09 at 11.) The trial court relies on Commonwealth v. Poncala, 915 A.2d 97 (Pa.Super.2006), appeal denied, 594 Pa. 678, 932 A.2d 1287 (2007), for the proposition that the mandatory and specific sentencing provision set forth in Section 3804(c)(3) applied to appellant's current DUI offense under Section 3802(c), and overrode the general and discretionary IP sentencing provision of 42 Pa. C.S.A. § 9804(b)(5). (Trial court opinion, 1/7/09 at 11.) However, in Commonwealth v. Williams, 941 A.2d 14 (Pa.Super.2008) (en banc), this court limited Poncala to instances where the defendant is not an "eligible offender" under the IP statute and/or the county program does not meet the standards for IP set forth in the Pennsylvania Code. Williams, 941 A.2d at 26. In Poncala, for example, the record indicated that the defendant had undergone drug and alcohol assessment and was not recommended as a Section 9802 eligible offender due to violent behavior that posed a threat to public safety. Id. The Williams court held that a serial DUI offender subject to mandatory DUI penalties may be sentenced to IP so long as the program is a qualified program and the defendant is a qualified eligible offender. Id. Therefore, assuming the Delaware County IP program is a qualified program and appellant is an eligible offender under the IP statute, the trial court would have been within its statutory authority and discretion to impose IP for appellant's third DUI offense. The trial court's assertion that it lacked such authority is incorrect. Williams. Nevertheless, we need not remand for resentencing because this was not the basis for the trial court's decision to deny appellant time credit and it is obvious from the record that the trial court was not inclined to impose IP in any event.