J-S33010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZABEIROU RACHID ISSOUFOU | : | |
| | : | |
| Appellant | : | No. 2331 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 23, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0007517-2018

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 11, 2021**

Appellant, Zabeirou Rachid Issoufou, appeals from the July 23, 2019 Judgment of Sentence entered in the Montgomery County Court of Common Pleas following his non-jury conviction of Driving Under the Influence of Alcohol ("DUI"), 75 Pa.C.S. § 3802(a)(2).  Appellant challenges the trial court's denial of his Motion to Suppress, the sufficiency of the Commonwealth's evidence, and the sentencing court's imposition of costs without consideration of Appellant's ability to pay.  After careful review, we affirm.

The facts and procedural history are as follows.  On Saturday, June 2, 2018, at approximately 9:45 AM, the Upper Dublin Police Department dispatched Officer Stephen Pimm to a suspicious vehicle call in a residential

---

[*] Former Justice specially assigned to the Superior Court.

neighborhood. Officer Pimm approached the vehicle without using his lights or siren. He found the vehicle parked legally with the engine running.

Officer Pimm parked his marked patrol car directly behind the vehicle, exited it, and approached the vehicle from the driver's side. As Officer Pimm approached the vehicle, he observed that all four of the windows were open slightly[1] and that Appellant was, at least initially, asleep in the driver's seat.

Appellant awoke as Officer Pimm approached the vehicle. Through the open driver's side window Officer Pimm asked Appellant if he was okay. As Appellant responded, Officer Pimm immediately detected a strong odor of alcohol on Appellant's breath and observed that Appellant's speech was slow and slurred and that his eyes were red and bloodshot.

Appellant told Officer Pimm that the prior evening, he had been at a party around the corner at a friend's house. He stated that he had parked his vehicle in its current location around 9:00 AM and told Officer Pimm that if his being parked there was a problem, he could just leave, to which Officer Pimm said "hold on."

Corporal Andrew Rowland then arrived on the scene and spoke separately with Appellant about the events leading up to this encounter. Appellant's explanation to Corporal Rowland was not consistent with the report Appellant gave to Officer Pimm. In particular, Appellant told Corporal Rowland

---

[1] Officer Pimm could not say exactly how open Appellant's windows were, but he indicated a space of about four inches by holding apart his thumb and index finger. N.T. Suppression at 45.

- 2 -

that Appellant had been drinking beer at a Big Heads bar in Willow Grove until 1:00 AM. Appellant could not explain how he ended up on School Lane in Upper Dublin. Corporal Rowland noticed the indicia of alcohol consumption on Appellant, including bloodshot glassy eyes, a smell of alcohol coming from his breath, and delayed responses to his questions. Corporal Rowland did not observe any beer or liquor bottles anywhere in Appellant's vehicle.

The officers asked Appellant to turn off and exit the vehicle to perform field sobriety tests. Appellant complied. Following the field sobriety tests, Officer Pimm and Corporal Roland concluded that Appellant was under the influence of alcohol and was not capable of safely operating a motor vehicle.

Officer Pimm arrested Appellant. Appellant consented to a blood draw, which took place at 10:52 AM and indicated a blood alcohol concentration of .09% plus or minus .006%.

The Commonwealth charged Appellant with two counts of DUI. Appellant filed a pre-trial Motion to Suppress claiming that, from the outset, the interaction between Appellant and Officer Pimm constituted an investigative detention, and that the investigative detention was not justified by Officer Pimm's reasonable suspicion Appellant had been engaged in criminal activity.

On July 23, 2019, immediately prior to the commencement of Appellant's trial, the court held a hearing on the Motion to Suppress. The court heard testimony from Officer Pimm and Corporal Rowland establishing the facts as set forth above. N.T. Suppression, 7/23/19, at 7-34. Officer

Pimm also testified with particularity regarding Appellant's performance on five field sobriety tests and the results of his portable breath test and the contents of his police vehicle's dash camera video. *Id.* at 15-20. The Commonwealth also played for the court the audio portion of Officer Pimm's dash cam video, which recorded his interaction with Appellant.

Following its consideration of the evidence presented and the parties' arguments, the trial court placed its findings of fact and conclusions of law on the record. The court concluded, *inter alia*, that the original interaction between Officer Pimm and Appellant was properly characterized as a mere encounter and that the initial observations by Officer Pimm of intoxication supported a reasonable suspicion that Appellant had driven his vehicle while intoxicated, which justified the subsequent investigative detention. The court further concluded that probable cause supported Appellant's arrest because Appellant had failed some of the field sobriety tests. Accordingly, the court denied Appellant's Motion to Suppress evidence.[2]

The case proceeded immediately to a stipulated non-jury trial. The parties stipulated to the incorporation of the testimony from the suppression hearing into the trial record, except for the results of two field sobriety tests and the portable breath test. The parties also stipulated that defendant consented to a blood draw and to its result.

---

[2] The court noted that "the initial encounter between the officer and [Appellant] is not unlawful. It is appropriate either under the [m]ere [e]ncounter [d]octrine or the [c]ommunity [c]are-[t]aking [d]octrine. There is nothing wrong with that. It is most appropriate." N.T. at 45.

At the conclusion of trial, the court found Appellant guilty of DUI. The court imposed an agreed sentence of 6 months' probation, and to pay a $300 fine, costs,[3] and supervision fees. Appellant did not file a Post-Sentence Motion.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following three issues on appeal:

1. Did the suppression court err in denying [Appellant's M]otion to [S]uppress when the record shows police officers had no reasonable, articulable suspicion that [Appellant] was engaged in any criminal activity at the time of his investigative detention?

2. Was there sufficient evidence to establish that [Appellant] had driven, operated[,] or was in actual physical control of the movement of a vehicle between 8:52 [AM] and 10:52 [AM] on July 23, 2019?

3. Did the sentencing court err in imposing costs and a supervision fee absent a determination or evidence of [Appellant's] ability to pay where [Appellant] was an indigent defendant?

Appellant's Brief at 4.

**Issue 1 – Motion to Suppress**

In his first issue, Appellant challenges the denial of his Motion to Suppress. *Id.* at 10-18. Relying on ***Commonwealth v. Livingstone***, 174 A.3d 609 (Pa. 2017), and ***Commonwealth v. Hampton***, 204 A.3d 452 (Pa. Super. 2019), he argues that the suppression court erred in characterizing his interaction with Officer Pimm, from the start, as a mere encounter and not an

_____

[3] The amount of the costs imposed was not stated on the record at the hearing or in the written sentencing Order, but totaled $1,527.50.

- 5 -

investigative detention. *Id.* at 10. In support of this claim, Appellant, analogizing this case to a traffic stop, asserts that no reasonable person would believe he was free to leave if he awoke to a marked police car parked behind his vehicle and a uniformed police officer approaching his car as Appellant did. *Id.* at 14. He also argues that the suppression court's conclusion that the interaction between Appellant and Officer Pimm was, at the outset, a mere encounter was in error because the record does not support the court's finding that Officer Pimm observed that he "smelled a strong odor of an alcoholic beverage coming from [Appellant's] breath, [Appellant's] speech was slow and slurred, and [Appellant] had bloodshot, red eyes" before Appellant rolled down his window. *Id.* at 15.

Appellant also argues that Officer Pimm's observation of a "black male asleep in the driver's seat" of a lawfully parked vehicle, with no damage to the vehicle or the surrounding area, and no observation of illegal activities did not amount to a reasonable articulable suspicion that Appellant was engaged in criminal activity at the time of his investigative detention. *Id.* at 10.

When we review the denial of a Motion to Suppress, "we are limited to considering only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1198 (Pa. Super. 2018) (*en banc*) (citation and internal quotation marks omitted). When testimony and other evidence support the trial court's findings of fact, this

Court is bound by them and we "may reverse only if the court erred in reaching its legal conclusions based upon the facts." *Id.* (citation omitted).

We are highly deferential to the suppression court's factual findings and credibility determinations. *Commonwealth v. Batista*, 219 A.3d 1199, 1206 (Pa. Super. 2019). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). "[I]f the record supports the suppression court's findings, we may not substitute our own findings." *Bastista*, *supra* at 1206 (citation omitted). However, we give no deference to the suppression court's legal conclusions and review them *de novo*. *Id.*

"The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." *Commonwealth v. Neal*, 151 A.3d 1068, 1071 (Pa. Super. 2016). Importantly, "[o]nce a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012) (citing Pa.R.Crim.P. 581(H)).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protects citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). "To

secure the right of citizens to be free from [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000).

This Court has identified three categories of interactions between police and a citizen:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted). When determining whether an individual is subject to a mere encounter or an investigative detention, "[t]he pivotal inquiry is whether, in light of the facts and circumstances, a reasonable man, innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes." *Hampton*, 204 A.3d at 458 (citation omitted).

Appellant relies on *Livingstone* and *Hampton*. In *Livingstone*, a state trooper pulled his marked police cruiser alongside a stopped vehicle on the right shoulder of an interstate highway, activating the emergency lights on his vehicle. 174 A.3d at 614. After asking the vehicle's driver if she was okay and where she was going, the trooper pulled his vehicle in front of the

defendant's vehicle. *Id.* At approximately the same time, another trooper pulled behind the defendant's vehicle. *Id.* Our Supreme Court concluded that a seizure occurred when the trooper pulled his police vehicle, with its emergency lights activated, behind a parked or stopped vehicle. *Id.* at 622-25 (citing fourteen other jurisdictions supporting a similar holding).

In *Hampton*, the defendant drove his vehicle into the field of a privately owned church. 204 A.3d at 458. The police pulled in behind him, "effectively blocking his exit as his vehicle was facing a building, and he could not travel forward." *Id.* (citation and internal quotation marks omitted). In ruling that a reasonable person in the defendant's shoes would not have felt free to leave, this Court focused on the restriction of the defendant's freedom of movement "by means of physical force" by the police. *Id.* (citations omitted). Specifically, this Court concluded that the defendant was subject to an investigative detention when the officer parked behind defendant's vehicle in a way that completely blocked defendant's only means of leaving the area. *Id.* at 458-59.

Our Supreme Court has also found that an officer had "seized" an individual when the officer prevented the individual from exiting his vehicle by closing the door when the individual opened it. *Commonwealth v. Adams*, 205 A.3d 1195, 1200 (Pa. 2019). The Supreme Court stated that an "act of physical force and a show of authority[] is precisely the type of escalatory factor" that shows a seizure had occurred. *Id.* at 1200-01. This type of police action is clearly distinguishable from a request. *See Commonwealth v. Au*,

42 A.3d 1002, 1007 n.3 (Pa. 2012) (stating that when considering whether an individual has been "seized," a "request obviously differs from a demand").

In the instant case, the suppression court explained its finding that a mere encounter and not a seizure occurred when Officer Pimm pulled his vehicle behind Appellant's vehicle in response to the suspicious vehicle call concerning a man asleep inside a parked vehicle. The court stated:

> Officer Pimm did not stop [Appellant's] vehicle or pull him over to the side of the road. He did not block [Appellant's] path to leave the scene. He did not activate his sirens or flashers. [Appellant] could not feel restrained to leave when Officer Pimm pulled his patrol vehicle behind him because he was asleep at that moment.

Trial Ct. Op at 7.

The court "mindful of the importance of [] *Livingstone* and the many potential problems associated with pre-textual police encounters," concluded that:

> [I]n this case, the police were notified of [Appellant's] condition by a third person as opposed to initiating a contact with [Appellant]. [Appellant] was not stopped or pulled over by the police. The police did not engage its flashers or siren when parked behind [Appellant's] vehicle. The police did not block [Appellant] from leaving the scene. There was little or no intrusive conduct by the police other than asking [Appellant] to lower his driver's side window. The police had the right under the circumstances to make minimally intrusive observations at that moment and ensure that defendant was capable of driving away. [Appellant] was seized after Officer Pimm discovered evidence supporting a reasonable suspicion of criminal activity.

*Id.* at 10.

Our review of the record indicates that, unlike in *Livingstone* and *Hampton*, Officer Pimm testified that he approached Appellant's vehicle

without activating his lights or siren, parked his patrol car, and observed Appellant asleep in his still-running car. Officer Pimm did not position his police vehicle in a way that would have blocked Appellant's avenue of exit; thus, had Appellant been awake, he would have been capable of leaving the area. Additionally, Officer Pimm approached Appellant's vehicle alone, and did not issue any commands to Appellant. It was as Officer Pimm began conversing with Appellant through Appellant's slightly-open window that he could smell the odor of alcohol on Appellant's breath and noticed other indicia of intoxication. The record reflects that Officer Pimm made these observations before Appellant mentioned leaving the scene. We agree with the suppression court's conclusion that Appellant "was seized at the moment the officer said 'hold on' after [Appellant] said 'I'll just leave." Trial Ct. Op. at 9.

Given the totality of the circumstances, we conclude that Officer Pimm's interaction with Appellant was, a mere encounter until Officer Pimm's observations of the indicia of intoxication provided him with reasonable suspicion that Appellant had engaged in criminal activity, *i.e.*, driving while intoxicated. Accordingly, the trial court did not err in denying Appellant's Motion to Suppress.[4]

---

[4] In light of our disposition we need not address Appellant's alternate argument that the public safety exception of the community caretaking doctrine does not apply.

**Issue 2 – Sufficiency of the Evidence**

In his second issue, Appellant claims that the Commonwealth's evidence was insufficient to sustain his conviction of DUI. He argues that the Commonwealth failed to prove at what time he parked his vehicle and whether he was intoxicated when he did so. Appellant's Brief at 21. He further argues that the Commonwealth's evidence was insufficient to prove that his blood alcohol level exceeded the legal limit within two hours after he operated his vehicle. *Id.*

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). Our standard of review is *de novo*, but our scope of review is limited to the evidence admitted at trial viewed in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Rushing*, 99 A.3d 416, 420-21 (Pa. 2014).

"[W]hile passing on the credibility of the witnesses and the weight of the evidence [the factfinder] is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017). "[O]ur jurisprudence does not require fact[]finders to suspend their powers of logical reasoning or common sense in the absence of direct evidence. Instead, [the factfinder] may make reasonable inferences from circumstantial evidence introduced at trial." *Commonwealth v. Teems*, 74 A.3d 142, 148 (Pa. Super. 2013) (internal citation omitted).

The court convicted Appellant of 75 Pa.C.S. § 3802(a)(2) which prohibits an individual from driving, operating, or being in "actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated, or been in actual physical control of the movement of the vehicle."

Whether a person is in actual physical control of a vehicle is "determined based on the totality of the circumstances, including the location of the vehicle, whether the engine was running[,] and whether there was other evidence indicating that the defendant had driven the vehicle at some point prior to the arrival of police on the scene." *Commonwealth v. Wolen*, 685 A.2d 1384, 1385 (Pa. 1996).

A court may find that a defendant was in actual physical control of his car when the defendant is asleep in the front seat of the car while the car was parked on the side of the road with its engine running and its lights on. *Commonwealth v. Toland*, 995 A.2d 1245, 1246 (Pa. Super. 2010).

The following evidence informed the trial court's conclusion that Appellant had violated Section 3802(a)(2):

> Here, [Appellant] was the sole occupant of the vehicle and was asleep while sitting in the driver's seat. The engine was running. He was parked on a public street in a residential neighborhood where he did not live. He provided conflicting testimony about how he got to that location and could not clearly recollect the eight to nine hours before he woke. He testified about drinking beer at a bar in Willow Grove the night before, partying at a friend's house nearby (although he could not remember which house) and

parking around 9:00 AM (about 45 minutes before Officer Pimm approached him).

Trial Ct. Op. at 11.

The court concluded that this evidence was sufficient to find beyond a reasonable doubt that Appellant was in actual physical control of his motor vehicle. *Id.* We agree.

The trial court also addressed Appellant's claim that the Commonwealth failed to prove that Appellant was in actual physical control of the movement of his vehicle between 8:52 AM and 10:52 AM when he had his blood drawn and that his blood alcohol content was at least .08% during that period. In particular, the court noted that Appellant told Officer Pimm that Appellant had parked his vehicle around 9:00 AM that morning. *Id.* at 12. Only 45 minutes later, Officer Pimm discovered Appellant in actual physical control of his vehicle as Appellant was the sole occupant in the driver's seat in a vehicle with its engine running. *Id.* Thus, since both 9:00 AM and 9:45 AM were within two hours of the blood draw at 10:52 AM, the trial court concluded that Commonwealth likewise presented sufficient evidence to prove this element of the offense. *Id.*

Our review of the record confirms that the Commonwealth presented sufficient evidence from which the trial court, sitting as fact-finder, could reasonably infer that Appellant had been in actual physical control of his vehicle within two hours of his blood draw. Accordingly, Appellant is not entitled to relief on this claim.

**Issue 3 – Imposition of Costs**

In his final issue, Appellant claims that the trial court erred in imposing the costs of prosecution without first considering his ability to pay costs. Appellant's Brief at 22-27. Appellant did not file a pre-sentence Motion requesting that the court consider his indigency before imposing costs as part of his Judgment of Sentence; instead, Appellant raised this issue for the first time in this appeal.

A panel of this Court recently considered, and dismissed, an identical claim. In **Commonwealth v. Snyder**, 2021 WL 1324388 at *9 (Pa. Super. filed April 9. 2021), the defendant asserted that the trial court erred in failing to conduct an inquiry into his ability to pay before imposing costs as part of his sentence. The **Snyder** Court, noting that this claim implicates the legality of a defendant's sentence, addressed its merits even though Appellant had not raised it before the trial court. **Id.** at *11. Relying on another recent decision of this Court, **Commonwealth v. Lopez**, 2021 WL 1096376 (Pa. Super. 2021) (*en banc*), the **Snyder** Court concluded that a defendant is not entitled to a presentence determination of his ability to pay before the court imposes costs.

**Snyder** is dispositive of Appellant's claim. Accordingly, Appellant is not entitled to relief.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/11/2021</u>