593 A.2d 860

**COMMONWEALTH of Pennsylvania**

**v.**

**Anthony COZZONE, Appellant.**

Superior Court of Pennsylvania.

Argued April 3, 1991.

Filed June 11, 1991.

Reargument Denied July 30, 1991.

Joseph P. Green, Jr., West Chester, for appellant.

Stuart B. Suss, Asst. Dist. Atty., West Chester, for Com., appellee.

Before WIEAND, OLSZEWSKI and BROSKY, JJ.

WIEAND, Judge:

Anthony Cozzone was charged with driving while under the influence of alcohol when, on March 12, 1989, the vehicle which he was driving went out of control and struck two parked cars and a multi-unit mailbox in the parking lot of a residential condominium complex. He was tried by jury and was found guilty on August 18, 1989. Sentencing was deferred pending determination of post-trial motions. The motions were denied on April 25, 1990.

In the meantime, on November 18, 1989, Cozzone was again arrested and charged with driving while under the influence of alcohol. As a condition for being released on bail, he entered an inpatient alcohol treatment center, where he remained for thirty-two (32) days. On June 21, 1990, he entered a plea of guilty to this charge.

On July 30, 1990, Cozzone appeared for sentencing on both convictions. For the first offense, he was sentenced to serve a term of imprisonment for not less than forty-eight (48) hours nor more than twenty-three (23) months. For the second offense, Cozzone was sentenced to serve a consecutive sentence of imprisonment for not less than thirty (30) days nor more than twenty-three (23) months. A motion to modify the sentence was denied, and Cozzone appealed.[1]

---

1. The practice of using a single appeal to obtain appellate review of separate convictions is not to be encouraged. See: *Commonwealth v. Bunch*, 466 Pa. 22, 26 n. 1, 351 A.2d 284, 285 n. 1 (1976); *Commonwealth v. Cronin*, 464 Pa. 138, 139–140 n. 1, 346 A.2d 59, 60 n. 1 (1975); *Commonwealth ex rel. Jackson v. Maroney*, 196 Pa.Super. 539, 542, 176 A.2d 178, 180 (1961), *cert. denied*, 371 U.S. 893, 83 S.Ct. 193, 9 L.Ed.2d 126 (1962); *Commonwealth v. Taylor*, 193 Pa.Super. 386, 389 n. 1, 165 A.2d 134, 136 n. 1 (1960).

In the first case, Cozzone contends that the evidence was insufficient to sustain the jury's guilty verdict because the Commonwealth failed to prove that he had operated his vehicle on a highway or trafficway. In the second case, he argues that the sentencing court committed error by (1) imposing a mandatory minimum sentence for a second offense when he was being sentenced for both offenses on the same day; and (2) failing to give him credit for time spent in an inpatient, alcohol treatment facility prior to his entering a plea of guilty to the second drunk driving offense.

### The First Offense

Section 3731 of the Vehicle Code, which makes it a misdemeanor of the second degree to operate a vehicle while under the influence of alcohol, applies "upon highways and trafficways throughout this Commonwealth." 75 Pa.C.S. § 3101(b). Therefore, an essential element of the offense is that a vehicle be operated on a highway or trafficway while the operator is under the influence of alcohol. *Commonwealth v. Karenbauer*, 393 Pa.Super. 491, 494, 574 A.2d 716, 718 (1990); *Commonwealth v. McFadden*, 377 Pa.Super. 454, 457, 547 A.2d 774, 775 (1988). A highway is defined as follows:

> The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

75 Pa.C.S. § 102. A trafficway is defined as:

> The entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom.

*Id.*

In determining whether the Commonwealth's evidence was sufficient to prove this element of the offense, we

determine, as in all challenges to the sufficiency of the evidence, "whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense[ ] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Jackson,* 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984). See also: *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990); *Commonwealth v. Brady,* 385 Pa.Super. 279, 282, 560 A.2d 802, 804 (1989). " 'Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence.' " *Commonwealth v. Stockard,* 489 Pa. 209, 213, 413 A.2d 1088, 1090 (1980), quoting *Commonwealth v. Tate,* 485 Pa. 180, 182, 401 A.2d 353, 354 (1979). See also: *Commonwealth v. Guest,* 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983); *Commonwealth v. Rose,* 463 Pa. 264, 268, 344 A.2d 824, 826 (1975).

The evidence in this case is clear that the parking lot on which appellant had his accident was not a publicly maintained highway. Whether it was a trafficway must be determined according to whether the evidence shows that the parking lot was "open to the public for purposes of vehicular travel as a matter of right or custom." 75 Pa.C.S. § 102.

Officer Charles E. Althouse, a member of the Willistown Township Police Department, was a resident of the Village Knoll condominium complex in Malvern, Chester County. On March 12, 1989, at or about 3:15 p.m., he was seated in his vehicle in the parking lot of the condominium complex, waiting for his wife. Althouse observed appellant driving a red Dodge truck through the parking lot at a high rate of speed. Appellant's vehicle struck the vehicle in which Althouse was seated, then struck another vehicle, and finally

collided with a multi-unit mailbox at the entrance to the Knoll Village complex. Althouse described the parking lot and its accessibility to members of the public as follows:

Q. Officer Althouse, is the Village Knoll complex located off a main road?

A. Yes. It is off of King Road, King Street.

Q. And is the lot paved?

A. Yes, it is.

Q. And are there any barriers that prohibit entrance to that lot such as a gate that comes down or any sort of barrier whatsoever?

A. Not at all.

Q. And back on March 12, 1989, were there any no parking signs?

A. None.

Q. And were there any signs that said reserve parking?

A. None whatsoever.

Q. And on the twelfth of March were there any private property signs?

A. No, there was not.

Q. And were there any no trespassing signs?

A. No, there was not.

Q. In order to gain entrance to that lot from King Road or King Street do you need any sort of sticker or a pass?

A. Nothing whatsoever.

Q. And can visitors who are visitors of the condominium residence enter that lot and park there?

A. Yes, they can.

Q. And have they in fact done that?

A. Oh, yes.

Q. Mr. Althouse, could you give the members of the jury and the Court some sense what you have seen this lot used for, the circumstances under which it has been used?

A. Well, I have seen the delivery vehicles in there such as UPS.

. . . .

THE COURT: . . . .

Officer Althouse, can you tell us what use was made of this area in terms of vehicular traffic for the two weeks prior to and up to and including March 12, the time of the accident? Can you do that for us?

THE WITNESS: Well, it has traffic on it, constant basis, coming and going with the residents that live there, visitors, mail deliveries, service trucks coming in and out, trash trucks on a frequent basis, every other day.

BY MR. SIEGEL [Assistant District Attorney]:

Q. What if any transportations were provided?

A. Cabs enter. There is a disabled gentleman that lives in the complex. Cabs come in there to pick him up on a frequent basis.

Q. And prior to March 12, had you, prior to that time, had people place[d] their condominiums up for sale?

A. There was—at that particular time there was a unit in the complex that was up for rent and there is—

Q. Could you tell the Court what you observed with respect to this use?

A. I have observed cars coming through slowly looking at the different units, check out the complex area.

Q. And within this complex, the Village Knoll complex, is there—could you describe for the members of the jury what if any area there is for driving as opposed to parking?

A. Well, the specific marked places for driving is on the left as you proceed around and on the right is the traffic where traffic can move, the movement for traffic.

A review of the decided cases suggests that this evidence was sufficient to support a determination by the jury that appellant had been driving on a trafficway.

In *Commonwealth v. Wilson*, 381 Pa.Super. 253, 553 A.2d 452 (1989), a unanimous panel of the Superior Court held that the parking lot of an Elks Club was a trafficway, even though the lot had been posted with a sign declaring it to be private property. The Court reasoned as follows:

> It would raise form to towering levels above substance if parking lots, in which vehicular traffic is encouraged and occurs, sometimes at high rates of speed, were to become "DWI-free zones," in which drunk driving is tolerated from entrance to exit. Such a construction would seriously undermine the effectiveness of any drunk driving prohibitions.
>
> In Wilson's case, the trial court found the Elks Club parking lot to be open to the public by custom even though the lot was marked private by a sign. This fulfills the prerequisite that a trafficway, by definition, must be open to the public. Even if restricted by signs, if a parking lot is used by members of the public, it is a trafficway for purposes of 75 Pa.C.S.A. § 3101.

*Commonwealth v. Wilson, supra*, 381 Pa.Superior Ct. at 257, 553 A.2d at 454. The facts of the instant case are stronger, for the parking lot at the Knoll Village condominium complex was not posted with notices declaring it to be private property, and public access thereto was not restricted in any way. As in *Wilson*, however, the lot was open to and used by the public.

A similar conclusion was reached by the Commonwealth Court in *Commonwealth, Department of Transportation v. Bendik*, 112 Pa.Commw. 591, 535 A.2d 1249 (1988), where the area under consideration was a motel parking lot. In holding that a motel parking lot came within the Vehicle Code's definition of a trafficway, the Court said:

> It would appear from the use of a motel parking lot that it is customarily open to the public for the purpose of vehicular travel to the extent that members of the general public are welcome to drive onto the lot if they wish to park their car and patronize the motel or, as in this case,

a restaurant therein. Appellee argues that a parking lot is not designed for vehicular travel but rather for parking. This ignores the fact that vehicular travel does occur on a parking lot, even though the travel is limited to the movement of cars from a highway to spaces in the lot and vice versa.

The purpose of Section 3101 is to afford protection to the public from serious traffic offenses even though these offenses did not occur on highways. It is this court's opinion that the legislature was contemplating accidents such as the one which involved appellee when it included the term "trafficways" in the Code and permitted the prosecution of serious traffic offenses, such as drunk driving, committed on them. Therefore, this court concludes that the trial court erred in concluding that the motel parking lot was not a trafficway.

*Id.,* 112 Pa.Commw. at 595, 535 A.2d at 1250–1251. See also: *Commonwealth v. Baughman,* 357 Pa.Super. 535, 516 A.2d 390 (1986) (one lane, dead end, dirt road located on private property was trafficway where evidence showed it had been used by occasional vehicular traffic). Compare: *Commonwealth v. Owen,* 397 Pa.Super. 507, 580 A.2d 412 (1990) (charge of driving while under influence of alcohol properly dismissed where Commonwealth failed to offer any evidence to establish that parking lot was highway or trafficway); *Commonwealth v. McFadden,* 377 Pa.Super. 454, 547 A.2d 774 (1988) (plurality opinion holding that evidence failed to show private, dead end road in trailer court was highway or trafficway); *Commonwealth, Department of Transportation v. McLaughlin,* 124 Pa. Commw. 496, 556 A.2d 533 (1989) (parking lot of residential condominium complex not trafficway where it was "private lot to be used only by the residents of the complex," including the defendant, who was also a resident).[2]

2. *McLaughlin* was overruled by the Commonwealth Court, sitting en banc, in *Commonwealth, Department of Transportation v. Bird,* 134 Pa.Commw. 305, 578 A.2d 1345 (1990).

We conclude, therefore, that the evidence was sufficient to sustain the jury's finding that appellant had violated the provisions of 75 Pa.C.S. § 3731(a)(1) and (4) on March 12, 1989. The judgment of sentence for that offense, therefore, will be affirmed.

## The Second Offense

■ Appellant's remaining arguments pertain to the sentence imposed for the offense which occurred on November 18, 1989. He argues that the sentencing court erred when it held that he had previously been convicted of the same offense for purposes of applying the mandatory minimum sentence established by 75 Pa.C.S. § 3731(e)(1)(ii).[3] He contends, more specifically, that inasmuch as he was sentenced for both offenses on the same day there could be no prior conviction. A conviction does not occur, he argues, until after a judgment of sentence has been imposed and has either been reviewed by an appellate court or the time for appeal has passed. We reject this argument.

"A prior conviction means 'previously convicted' as defined in 42 Pa.C.S. § 2154(a)." 204 Pa.Code § 303.7(g). There, the legislature defined "previously convicted" to include "any finding of guilt ... whether or not sentence has been imposed ... prior to the commission of the current offense." 42 Pa.C.S. § 2154(a)(2). This definition was intended to be a repudiation of the notion appearing in a former version of the Sentencing Guidelines and several decisions of the Superior Court which had held that a prior conviction required not only a verdict of guilty but also the

---

**3.** This provision of the statute is as follows:

(e) Penalty.—

(1) Any person violating any of the provisions of this section is guilty of a misdemeanor of the second degree and the sentencing court shall order the person to pay a fine of not less than $300 and serve a minimum term of imprisonment of:

....

(ii) not less than 30 days if the person has previously been convicted of an offense under this section or of an equivalent offense in this or other jurisdictions within the previous seven years.

imposition of sentence.[4] In *Commonwealth v. Eyster*, 401 Pa.Super. 477, 585 A.2d 1027 (1991), the Superior Court, sitting en banc, observed:

> The simplest, most direct interpretation which can be derived from the legislation is elimination from the decision of *Mourar, Wolfe* and the guideline definition of prior offense, the requirement that a person must have been convicted and sentenced before the commission of the subsequent offense, to qualify the prior offense for the prior record score. The legislative intent is clear: to provide for an enhancement of punishment for those persons who stand convicted but who await sentence and to serve as a deterrent for those persons, particularly when overcrowded jails increasingly require persons to be released pending sentencing. The amendment eliminates the grace period between conviction and sentencing.

*Commonwealth v. Eyster, supra,* 401 Pa.Superior Ct. at 485, 585 A.2d at 1031.

This interpretation of "previously convicted" is consistent with the manner in which the Supreme Court has interpreted the term "convicted" for purposes of imposing enhanced sentences in other cases. In *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984), a case involving imposition of the death penalty, the Court held that a verdict of guilty rendered against the defendant in a prior murder trial could properly be considered as being an aggravating circumstance under and pursuant to 42 Pa.C.S. § 9711(d)(10) [5] in the penalty phase of a murder trial, even

4. These decisions include: *Commonwealth v. Kearns,* 365 Pa.Super. 13, 528 A.2d 992 (1987); *Commonwealth v. Mourar,* 349 Pa.Super. 583, 504 A.2d 197 (1986), *allocatur granted,* 522 Pa. 574, 559 A.2d 36 (1989); *Commonwealth v. Wolfe,* 349 Pa.Super. 415, 503 A.2d 435 (1986), *appeal dismissed,* 517 Pa. 406, 537 A.2d 1370 (1988).

5. 42 Pa.C.S. § 9711(d)(10) provides as follows:

(d) Aggravating circumstances.—Aggravating circumstances shall be limited to the following:

. . . .

(10) The defendant has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was

though the judgment of sentence had not been entered on the prior conviction. The Court declared that "the legislature evidenced a clear intent that 'convicted' mean[s] 'found guilty of' and not 'found guilty and sentenced.' " *Id.* 502 Pa. at 497–498, 467 A.2d at 300 (footnote omitted). See also: *Commonwealth v. Morales*, 508 Pa. 51, 67–68, 494 A.2d 367, 375–376 (1985); *Commonwealth v. Beasley*, 505 Pa. 279, 287–288, 479 A.2d 460, 464 (1984). Cf. *Commonwealth v. Becker*, 366 Pa.Super. 54, 530 A.2d 888 (1987) (acceptance into ARD program, not acceptance into and completion of program, constitutes prior conviction under 75 Pa.C.S. § 3731(e)).

In short, it is now abundantly clear from legislative enactments and appellate court decisions that when appellant was sentenced for the offense committed on November 18, 1989 he had previously been convicted of driving while under the influence of alcohol. Therefore, the trial court did not err when it imposed upon him a mandatory minimum sentence of imprisonment for thirty (30) days on his second conviction. It mattered not that appellant was sentenced at the same time for both the subsequent offense and the prior offense. See: *Commonwealth v. Gretz*, 520 Pa. 324, 554 A.2d 19 (1989) (mandatory sentence pursuant to 75 Pa.C.S. § 3731(e)(1)(ii) is applicable if, at time of sentencing, defendant has previously been convicted).[6]

■ Finally, appellant contends that the sentencing court erred when it refused to give him credit for the thirty-two days spent in an inpatient, alcohol treatment facility prior to

imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense.

**6.** Appellant also attempts to argue that any interpretation of the term "previously convicted" contrary to the one which he advances in this appeal would contravene his constitutional right to direct appellate review. This argument, however, was not raised in his motion to modify sentence and, therefore, must be deemed waived. See: *Commonwealth v. Schueg*, 400 Pa.Super. 52, 54, 582 A.2d 1339, 1340 (1990); *Commonwealth v. Rogers*, 386 Pa.Super. 476, 479, 563 A.2d 165, 166–167 (1989); *Commonwealth v. Pyett*, 372 Pa.Super. 291, 295, 539 A.2d 444, 446 (1988).

his plea of guilty to the second offense. After appellant had failed to appear for a preliminary hearing, a warrant was issued for his arrest. Thereafter, appellant was permitted by the District Justice to admit himself to an alcohol treatment facility in lieu of being committed to the county prison. This admission to a treatment facility was made a condition of his being released on bail. Appellant was thereafter in treatment for thirty-two (32) days.

The Sentencing Code provides for the giving of credit for time served as follows:

### § 9760.  Credit for time served

After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court shall give credit as follows:

(1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1). This is amplified by Pa.R.Crim.P. 1406(b) as follows:

(b) A sentence to imprisonment shall be deemed to commence and shall be computed from the date of commitment for the offense or offenses for which such sentence is imposed, which date shall be specified by the judge. Credit, to be calculated by the clerk of court, shall be given as provided by law for any days spent in custody by the defendant for such offense or offenses prior to the imposition of sentence.

Pa.R.Crim.P. 1406(b).

In *Commonwealth v. Jones,* 211 Pa.Super. 366, 236 A.2d 834 (1967), the Superior Court held that a defendant who had been charged with arson was entitled to credit for pretrial time spent in a state hospital following commitment for a mental health evaluation. The Court reasoned:

"Custody, in criminal law, is the same thing as detention, in civil law, and is synonymous with imprisonment. Imprisonment is the detention of a person contrary to his will." Words and Phrases, Vol. 10, page 722. It seems too clear for argument that this appellant has been in custody from the date of the arrest to the present time. He has at all times been under the jurisdiction and subject to the authority of the court; has been restrained of his liberties during the entire time of confinement; and if he had violated this custody by "walking away" he would have been apprehended by the authorities and either returned to the hospital or to the county jail.

*Id.*, 211 Pa.Superior Ct. at 370–371, 236 A.2d at 836. Similarly, in *Commonwealth v. Usher*, 264 Pa.Super. 435, 399 A.2d 1129 (1979), the Court held that a juvenile probation violator was entitled to credit for time spent during probation at the Abraxas Foundation, a non-profit organization operating a comprehensive residential drug and alcohol treatment program. The *Usher* Court observed:

From the testimony taken at the hearing, and considering the various rules and regulations of Abraxas, we conclude that the restraint of the appellant during his stay at Abraxas was sufficient to satisfy the requirement of "Custody" set forth in the rule and the statute ... so as to qualify him for credit on his sentence for the time spent there.

*Id.*, 264 Pa.Superior Ct. at 438, 399 A.2d at 1130. Accord: *Commonwealth v. Mellon*, 267 Pa.Super. 163, 169, 406 A.2d 569, 572 (1979).

The Commonwealth's argument that an alcohol rehabilitation program lacks traditional aspects of confinement and therefore fails to satisfy the statute's mandate of imprisonment[7] is lacking in merit and has been rejected by the Supreme Court of Pennsylvania. In *Commonwealth v. Conahan*, 527 Pa. 199, 589 A.2d 1107 (1991), the Court said:

Pursuant to 42 Pa.C.S. § 9760, a defendant may be given a credit for time spent in custody, and we firmly

_____

7. See: 75 Pa.C.S. § 3731(e).

believe that "custody" in this sense includes time spent in institutionalized rehabilitation and treatment programs. However, the Commonwealth argues that the mandatory sentence provided by 75 Pa.C.S. § 3731(e) should be construed as an exception to this general rule because the Legislature intended "imprisonment" to mean jail and not other forms of custody.

We recognize that the term "imprisonment" immediately conjures the image of being involuntarily confined behind bars. However, the dictionary definition and common usage is more encompassing. "Imprisonment" is defined as:

> The act of putting or confining a man in prison. The restraint of a man's personal liberty; coercion exercised upon a person to prevent the free exercise of his powers of locomotion. It is not a necessary part of the definition that the confinement should be in a place usually appropriated to that purpose; it may be in a locality used only for the specific occasion; or it may take place without the actual application of any physical agencies of restraint (such as locks or bars), as by verbal compulsion and the display of available force. Every confinement of the person is an "imprisonment," whether it be in a prison, or in a private house, or even by forcibly detaining one in the public streets. Any unlawful exercise or show of force by which person is compelled to remain where he does not wish to be. Black's Law Dictionary (5th ed. 1979).

In *Commonwealth v. Kriston*, 527 Pa. 90, 588 A.2d 898 (1991), this Court sought to further define "imprisonment" as provided in 75 Pa.C.S. § 3731(e), and through the application of principles of statutory construction, we determined that:

> The legislature has expressly removed from consideration sentencing alternatives such as probation and partial confinement in cases, such as the present one, where a mandatory minimum sentence is provided by law. We believe this demonstrates an intent that a

mandatory sentence of imprisonment is to be carried out through *actual imprisonment in an institutional setting rather than through a lesser means.* (pp. 6–7) (Emphasis added).

This conclusion was sufficient to dispose of this issue in that case because it concerned the propriety of a credit awarded for time served in a home monitoring program, which clearly did not involve service in an "institutional setting."

In *Kriston* we were concerned with the non-custodial nature of a sentence being served in a personal residence. While it is true that one subject to home monitoring has his liberty restrained and risks being sent to prison if he violates the terms of the program, we could not hold that such a sentence was sufficient to satisfy the goals of the Legislature given the abundant amenities and non-rehabilitative temptations present in the home. However, in the case *sub judice* our definition of "imprisonment" compels a different result.

Conahan voluntarily committed himself to inpatient custodial alcohol rehabilitation, which he successfully completed after devoting ninety-five continuous days towards overcoming his disease. We find that his successful completion of this custodial inpatient rehabilitation, which took place in three hospitals, falls within the common meaning of "imprisonment" and is a sufficient "institutional setting" as contemplated by this Court in *Kriston*.

*Id.*, 527 Pa. at 203, 589 A.2d at 1109.

In the instant case, in contrast to *Conahan*, appellant did not voluntarily admit himself to an alcohol treatment facility. Instead, he entered the rehabilitation facility as a condition of bail in order to avoid pre-trial imprisonment. We conclude, therefore, that the time which appellant spent as a patient in the alcohol treatment facility was "time spent in custody" within the contemplation of 42 Pa.C.S. § 9760(1). As such, he is entitled to credit therefor against the sentence of imprisonment imposed for his second offense.

The judgment of sentence imposed at No. 1402–89, Chester County, is affirmed. The judgment of sentence at No. 1261–90, Chester County, is also affirmed, but appellant is given credit on account thereof for thirty-two (32) days spent in an inpatient, alcohol treatment program prior to the entry of his plea of guilty.