J.S15038/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JUDITH A. HOCKENBERRY, | : | |
| | : | No. 1121 MDA 2013 |
| Appellant | : | |

Appeal from the Judgment of Sentence May 7, 2013
In the Court of Common Pleas of Cumberland County
Criminal Division No(s).: CP-21-CR-0001038-2010

BEFORE: BOWES, OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED NOVEMBER 21, 2014**

Appellant, Judith A. Hockenberry, appeals from the judgment of

sentence entered in the Cumberland County Court of Common Pleas

following the revocation of her intermediate punishment[1] ("IP") sentence for

---

[*] Former Justice specially assigned to the Superior Court.

[1] Our Supreme Court has explained:

> 42 Pa.C.S. § 9763(c) authorizes a sentencing court to
> impose intermediate punishment as part of a sentence for
> DUI.  Pursuant to that intermediate punishment, the court
> may attach any of a number of conditions upon the
> defendant as it deems necessary.  These conditions include
> . . . participation in drug or alcohol screening and
> treatment programs . . . .  42 Pa.C.S. § 9763(b)(1)-(17)[.]

***Commonwealth v. Kyle***, 874 A.2d 12, 13 n.2 (Pa. 2005).

The Legislature's intent [behind the Pennsylvania County

driving under the influence/high rate of alcohol[2] (hereinafter "DUI"). Appellant claims the trial court misapplied the law in not awarding her credit for time spent in inpatient treatment as part of her IP sentence. We vacate the sentence and remand for the court to award credit.

The trial court summarized the procedural history of this case as follows. **See** Trial Ct. Op. 8/7/13, at 1-4. On July 27, 2010, Appellant pleaded guilty to DUI—third or subsequent offense and driving while operating privilege is suspended or revoked.[3] After evaluating Appellant, a Cumberland-Perry Drug and Alcohol Commission case manager recommended long-term inpatient treatment. **Id.** at 1. On October 5, 2013, the trial court imposed a sentence of five years in the IP program. The following day, October 6th, Appellant "was sent to Bowling Green" at Brandywine, an inpatient drug and alcohol rehabilitation center. **Id.** However, she was discharged on November 2nd because she was pregnant

---

Intermediate Punishment Act, 42 Pa.C.S. §§ 9801-9813,] was: "to give judges another sentencing option which would lie between probation and incarceration with respect to sentencing severity; to provide a more appropriate form of punishment/treatment for certain types of non-violent offenders; to make the offender more accountable to the community; and to help reduce the county jail overcrowding problem while maintaining public safety."

**Commonwealth v. Williams**, 868 A.2d 529, 534 (Pa. Super. 2005) (citations omitted).

[2] 75 Pa.C.S. § 3802(b).

[3] 75 Pa.C.S. § 1543(a).

and using substances. Appellant was then sent to Gaudenzia Vantage House until April 1, 2011.

On November 29, 2011, the probation department filed a petition to revoke Appellant's IP sentence, alleging Appellant (1) admitted using cocaine and drinking alcohol, (2) tested positive for cocaine twice, and (3) was "issued a citation for Public Drunkenness after being found to be under the influence of alcohol at the Wal-Mart." *Id.* at 2. The court subsequently granted a continuance on the hearing on the petition to determine whether Appellant "would be allowed to participate in the Cumberland County Treatment Court Program." *Id.* However, Appellant "did not enter the Treatment Court Program." *Id.*

Nevertheless, the probation department later withdrew its revocation petition "in an effort to afford [Appellant] another opportunity to lead a sober life." *Id.* Appellant, however, was required to: (1) undergo monitoring on a SCRAM bracelet for a minimum period of six months, (2) "complete the intensive outpatient program and the outpatient program [sic]" at Roxbury Treatment Center, (3) complete daily logs to account for her whereabouts, (4) comply with curfew requirements, (5) report to the probation office every Monday and Wednesday until she obtained gainful employment, and (6) obtain a General Educational Diploma. *Id.* "Initially, [Appellant] complied with these conditions. However, on October 14, 2012, [she] tested positive for using opiates and cannabinoids." *Id.* at 3.

The probation department thus filed a second petition for revocation of intermediate punishment on October 31, 2012. The court held a hearing on November 20th. Appellant

> admitted that she had violated the conditions of her program and she was revoked from the Intermediate Punishment Program. . . . However, in a final effort to give [Appellant] a chance for a sober life, her Probation Officer requested that she be considered for the State Intermediate Punishment Program.

*Id.* Subsequently, however, the Department of Corrections advised the court that Appellant was not eligible for the state IP program "because she was wanted for a Violation of Probation in Tennessee based upon an arrest for Aggravated Assault on a Police Officer and Possession of Paraphernalia."[4]

*Id.*

On May 7, 2013, the trial court, after obtaining an updated presentence investigation report, imposed the underlying sentence for DUI: a standard-range sentence of sixteen to forty-eight months' imprisonment with a Recidivism Risk Reduction Incentive sentence of twelve months.[5] The court gave "credit for 260 days previously served in the county and state prisons." *Id.* at 4. Appellant filed a post-sentence motion, requesting an

---

[4] Tennessee authorities later indicated that it would not seek extradition of Appellant. Trial Ct. Op. at 3.

[5] Appellant was also ordered to pay costs of prosecution, a $1,500 fine, and $500 restitution. For driving while operating privilege is suspended or revoked, the court imposed costs of prosecution and a $200 fine.

additional credit of 177 days spent in inpatient treatment as a part of her IP sentence. The court denied the motion, and this timely appeal followed.[6]

For her sole issue on appeal, Appellant claims the trial court erred by not granting her credit for time served in inpatient drug and alcohol treatment, totaling 177 days. Appellant's Brief at 12. She alleges she was entitled to credit because the treatment was a mandatory, court-ordered condition of her original intermediate punishment sentence. *Id.* Appellant claims her inpatient treatment constituted "time spent in custody" pursuant to 42 Pa.C.S. § 9760(2) because it was not voluntary, she could not opt out of treatment, and the inpatient facilities prevented her from leaving the premises. *Id.* We hold that Appellant is entitled to relief.

We first note:

> "[A] challenge to the trial court's failure to award credit for time spent in custody prior to sentencing involves the legality of sentence[.]" It is now well-settled and

> essential that the [trial] court maintain the ability to incarcerate persons for whom intermediate punishment is no longer a viable means of rehabilitation. Upon revocation, the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing. . . .

***Commonwealth v. Fowler***, 930 A.2d 586, 595 (Pa. Super. 2007) (citations omitted).

---

[6] Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Section 9760 of the Sentencing Code governs credit for time served and provides, in pertinent part:

> Credit against the maximum term and any minimum term shall be given to the defendant for all **time spent in custody** as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1) (emphasis added); *see also* 42 Pa.C.S. § 9773(b) (providing that upon revocation of county intermediate punishment sentence, court shall consider time served in county intermediate punishment program).

This Court has stated: "The principle underlying Section 9760 is that a defendant should be given credit for time spent **in custody** prior to sentencing for a particular offense." *Fowler*, 930 A.2d at 595 (citation omitted). While Section 9760, or any other provision of the Sentencing Code, does not define the phrase "time spent in custody," "[c]ourts have interpreted the word 'custody,' as used in Section 9760, to mean time spent in an institutional setting such as, at a minimum, an inpatient alcohol treatment facility." *Id.* at 596 (citations omitted).

With respect to IP, this Court has stated:

> "Intermediate punishment is an alternative to total confinement." Our Supreme Court has concluded that the Legislature intended imprisonment and intermediate punishment to be mutually exclusive and to be treated differently, noting:

> the Legislature provides that nothing in this chapter shall be construed as creating an enforceable right in any person to participate in an intermediate punishment program in lieu of incarceration. 42 Pa.C.S.[A.] § 9812. Thus, the Legislature now clearly distinguishes between incarceration, *i.e.*, imprisonment, and intermediate punishment.
>
> Generally, it is within the trial court's discretion whether to credit time spent in an institutionalized rehabilitation and treatment program as time served "in custody." . . .

*Id.* at 596 (some citations omitted).

Our review of Pennsylvania authority has not revealed a case with the facts and question presented in this case—whether inpatient drug treatment that is part of a county IP sentence, is "custody" for credit purposes. However, we consider the following decisions.

In the 1991 Pennsylvania Supreme Court decision of **Commonwealth v. Conahan**, 589 A.2d 1107 (Pa. 1991), the defendant was arrested for DUI, "voluntarily commenced inpatient treatment for DUI, which lasted for ninety-five days," and then subsequently pleaded guilty to DUI. **Id.** at 1108. The trial court imposed a mandatory sentence[7] of imprisonment and gave credit for the ninety-five days of treatment. **Id.**

Our Supreme Court first held that the term "custody" in section 9760 "includes time spent in institutionalized rehabilitation and treatment programs." **Id.** at 1109. The Court then held that, in the case before it, the

---

[7] The defendant was convicted under the predecessor DUI statute, 75 Pa.C.S. § 3731. **Conahan**, 589 A.2d at 1108.

trial court properly awarded the credit, noting:

> [The defendant] voluntarily and at his own expense entered a custodial hospital environment for well in excess of the applicable mandatory minimum sentence; [he] was restrained of his liberties during the entire time of his confinement in that if he had violated this custody by "walking away" he would not have received credit; and that he has taken responsibility for his alcoholism and maintained his sobriety through application of principles acquired during his rehabilitation and subsequent dedication to the ideology of Alcoholics Anonymous.

*Id.* However, the Court clarified that a DUI defendant was not entitled to such credit as of right, and instead, the award of credit was at the trial court's discretion. *Id.* at 1110.

Later that same year, the Superior Court decided **Commonwealth v. Cozzone**, 593 A.2d 860 (Pa. Super. 1991). In that case, the defendant was convicted of DUI. *Id.* at 861. While awaiting sentencing, he was arrested and charged with DUI again. *Id.* As a condition for bail for the second DUI charge, the defendant "entered an inpatient alcohol treatment center, where he remained for thirty-two . . . days." *Id.* He subsequently pleaded guilty to the second DUI charge. The court imposed sentence in both cases at the same hearing. *Id.* For the first DUI, it sentenced him to forty-eight hours to twenty-three months. *Id.* For the second DUI, it sentenced him to a consecutive term of thirty days to twenty-three months. *Id.*

On appeal, the defendant claimed the court failed to give him credit toward the second DUI conviction for time spent in treatment. *Id.* This Court noted that he "was permitted by the District Justice to admit himself

to an alcohol treatment facility in lieu of being committed to the county prison," and the "admission to a treatment facility was made a condition of . . . bail." *Id.* at 866. This Court reasoned the treatment was not voluntary and held:

> [I]n contrast to *Conahan*, [the defendant] did not voluntarily admit himself to an alcohol treatment facility. Instead, he entered the rehabilitation facility as a condition of bail in order to avoid pre-trial imprisonment. We conclude, therefore, that the time which [the defendant] spent as a patient in the alcohol treatment facility was "time spent in custody" within the contemplation of 42 Pa.C.S. § 9760(1). As such, he is entitled to credit therefor against the sentence of imprisonment imposed for his second offense.

*Cozzone*, 593 A.2d at 867-68.

In the 2007 Superior Court decision of *Fowler*,[8] the defendant completed twenty-five months of inpatient drug treatment as a part of the county Drug Treatment Court Program. *Fowler*, 930 A.2d at 588. The trial court denied his request for credit for this time. *Id.* at 590. On appeal to this Court, the defendant argued, *inter alia*, that he was entitled to the credit because the court ordered his participation in the drug treatment. *Id.* at 595. This Court disagreed, adopting the trial court's reasoning:

> Importantly, it was [the defendant] who requested the opportunity to participate in the Erie County Drug Court. [The defendant's] motivation, in part, was to avoid incarceration. . . .

---

[8] *Fowler* was an appeal from an order denying a Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, petition. *Fowler*, 930 A.2d at 588.

> Equally as important was the fact [that the defendant's] participation in the Drug Court Program was voluntary. This [p]rogram is not a mandated program. Instead, it was [the defendant] who requested to participate. [The defendant] could opt out of the program at any time.

*Id.* at 597. This Court also found,

> [The defendant] had misused and abused the many opportunities for rehabilitation without incarceration that the court had provided to him. The [trial] court declined to reward [the defendant's] actions with credit for time served. The court's decision was entirely within its purview.

*Id.* at 598.

Finally, in **Commonwealth v. Toland**, 995 A.2d 1242 (Pa. Super. 2010), the defendant was charged with DUI. *Id.* at 1243. "The magisterial district judge provided in the . . . bail information . . . that [the defendant] 'shall enter and complete [a] comprehensive in-patient alcohol/drug treatment program.'" *Id.* at 1247. Before entering treatment, the defendant was arrested for public drunkenness and hospitalized for a "dangerously high blood alcohol level." *Id.* The defendant then "referred himself for . . . inpatient treatment" in Oregon and transferred to a program in Arizona for additional inpatient treatment. *Id.* at 1248. The total time spent in these two programs was 354 days. *Id.*

Thereafter, the trial court imposed a mandatory minimum sentence of imprisonment. *Id.* at 1243. This Court specifically noted that the court could not impose "any form of IP, such as placement in a residential inpatient drug or alcohol treatment program, because [the defendant] was

subject to a mandatory sentence of imprisonment[.]" *Id.* at 1252 n.11. The defendant requested credit for the 354 days spent in inpatient rehabilitation. *Id.* at 1243, 1247. The trial court denied it, determining, "Despite the language in the bail information," the defendant "voluntarily checked himself into treatment." *Id.* at 1251.

On appeal, this Court affirmed. *Id.* We first reviewed *Conahan* and *Cozzone* and opined:

> [I]t seems that whether a defendant is entitled to credit for time spent in an inpatient drug or alcohol rehabilitation facility turns on the question of voluntariness. If a defendant is ordered into inpatient treatment by the court, *e.g.*, as an express condition of pre-trial bail, then he is entitled to credit for that time against his sentence. *Cozzone*. By contrast, if a defendant chooses to voluntarily commit himself to inpatient rehabilitation, then whether to approve credit for such commitment is a matter within the sound discretion of the court. *Conahan*. *See also Commonwealth v. Mincone*, . . . 592 A.2d 1375 (Pa.Super. 1991) (*en banc*) (trial court may exercise its discretion in determining whether to grant defendant credit towards his mandatory minimum sentence of imprisonment for time voluntarily spent at Gateway Rehabilitation Center, an institutionalized rehabilitation facility) (discussing *Conahan*, *supra*).

*Toland*, 995 A.2d at 1250-51.

The *Toland* Court agreed that the defendant had "voluntarily committed himself to residential rehabilitative treatment." *Id.* at 1251. We noted the defendant: (1) did not enter treatment until "one full month after his release on bail, and after he had been re-arrested for public drunkenness and hospitalized," (2) conceded "that he did not enter inpatient treatment to

avoid . . . jail for DUI, but did it 'voluntarily' to 'save [his] life,'" (3) claimed he began treatment as a condition of bail only after the trial court denied him credit, and (4) "continued his preliminary hearing [eight] times in order to remain in treatment, only to ultimately waive his preliminary hearing 15 months later, when, perhaps not coincidentally, he had spent nearly one full year in residential inpatient treatment," where the defendant "faced a mandatory minimum sentence of one year of imprisonment." *Id.*

The **Toland** Court next considered whether the trial court abused its discretion in denying credit. *Id.* The trial court had found the treatment facilities "were not custodial and did not rise to the level of 'imprisonment,'" where the defendant "was not restrained and was free to leave treatment at any time." *Id.* Furthermore, the defendant "was permitted to do his own grocery shopping[,] volunteer in the community," and "had a part-time job at Office Max." *Id.* at 1252. This Court held that the defendant failed to demonstrate an abuse of discretion. *Id.*

Applying the dictates of **Toland** to the case *sub judice,* we review whether Appellant's participation in inpatient drug treatment was voluntary. **See id.** at 1250-51. In arguing that it was not voluntary, Appellant emphasizes that inpatient drug treatment was a condition of her IP sentence, she could not opt out of treatment at any time, and she could not leave the treatment center, as police would have apprehended her. Appellant's Brief at 17. In its opinion, the trial court did not discuss the

voluntariness of Appellant's drug treatment. Instead, its reasons for denying credit are: (1) Appellant was clearly told that if she failed to comply with the conditions of her IP sentence, she could be imprisoned up to 60 months; (2) she was "given every chance" but repeatedly failed at her treatment; (3) she was afforded 177 days of inpatient treatment, whereas "most other participants in the Intermediate Punishment Program" receive 90 days; (4) "the public spent well over $30,000.00 for [Appellant's] rehabilitative treatment" and she is not required to pay any of those costs; and (5) her "inpatient treatment ultimately proved to be a failure [and] did nothing to change her drug use habits," and awarding credit "would reward failure." Trial Ct. Op. at 8-9.

While it is clear the trial court carefully reviewed the history of Appellant's case, we hold the court erred in not considering whether she voluntarily entered inpatient treatment. *See Toland*, 995 A.2d at 1250-51. After review of the foregoing decisional authority and the certified record, including the original sentencing order of October 5, 2010, and the trial court opinion, we hold that Appellant's participation in treatment was not voluntary akin to that in *Fowler* and *Toland*. Although Appellant's sentence was not imposed through Drug Court, like the sentence in *Fowler*, she "was sent to Bowling Green" the day after she was sentenced, unlike the defendant in *Towland*, who did not enter treatment until one month after release on bail and after another arrest for public drunkenness and

hospitalization. **See Towland**, 995 A.2d at 1247, 1251; **Fowler**, 930 A.2d at 588. Appellant then "remained [at Bowling Green] until November 2, 2010, when she showed up at the Cumberland County Probation Office having been discharged from Bowling Green." Trial Ct. Op. at 1.

Appellant avers on appeal that she is entitled to 177 days of credit, which we calculate is the length of time between October 6, 2010, when she started at Bowling Green, and April 1, 2011, when she left Gaudenzia Vantage House. In light of our foregoing discussion, we agree that she is entitled to this amount of credit. Accordingly, we vacate the judgment of sentence and remand for the trial court to award 177 days of credit.

Judgment of sentence vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2014