J-S67005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES THOMAS JAMES ANTON | : | |
| | : | |
| Appellant | : | No. 498 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 25, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0004327-2018

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 13, 2020**

Appellant, Charles Thomas James Anton, appeals from the judgment of sentence entered on February 25, 2019.  We affirm.

The Commonwealth charged Appellant with driving under the influence of a controlled substance.  During Appellant's bench trial, Drakelynn Young testified that, on June 1, 2018, she was "in the parking lot of [the] Wine and Spirits [Store] . . . [located] at 1036 Lititz Pike in Warwick Township."  N.T. Trial, 2/25/19, at 5.  Ms. Young testified that she parked her vehicle directly behind Appellant's car and, when she got out of her car, she saw Appellant "hanging in and out of his car, like he was messing with his brakes."  *Id.* at 6. Ms. Young testified:  "I made sure he was okay.  And when I got out of my car, his car reversed and hit mine."  *Id.* at 8.

_____

[*] Former Justice specially assigned to the Superior Court.

In response, Appellant got out of his car and tried to give Ms. Young concert tickets. *Id.* Ms. Young testified that when Appellant approached her: "I honestly couldn't understand him; he was mumbling. . . . He was slurring. He couldn't stand still. He was all over the place . . . [and h]e had scratches all on his arms and his legs." *Id.* at 9-10. She testified that, based on her observations and experience, she believed Appellant was under the influence of a drug. *Id.* at 11. Therefore, Ms. Young called the police, told the police that she believed Appellant was under the influence of a controlled substance, provided Appellant's location and identification information, and drove her vehicle to Target – which was in the "same shopping center[, but in a] different parking area." *Id.* at 19-20. Specifically, the trial court noted, "[the Wine and Spirits Store is in] the same strip, it's just a totally different part of the shopping area for parking for Target." *Id.* at 20.

Sergeant Rodney King of the Northern Lancaster County Regional Police Department responded to Ms. Young's call. *Id.* at 27-28. Sergeant King testified:

> I . . . dispatch[ed] to 1036 Lititz Pike in Warwick Township. . . . Well, the location itself is Shops at Kissel Hill. It's basically a strip of stores. When I entered, I entered at the Lititz Pike side of the parking lot and drove towards the buildings.
>
> As I'm driving towards the building, I'm going down a row between parking rows. And as I'm approaching, off to my right-hand side, just as I'm getting close to the Wine and Spirits Store, there's a black Nissan Sentra that was sitting in a stall. It was in the stall parked with the front end facing out. So it had either been pulled through or backed into the stall. I saw nobody behind it, so when I got down there I

pulled in behind the Nissan, and I did verify at that point that it was a black Nissan Sentra and saw the license plate was, as was given to me by Ms. Young.

*Id.* at 28-29.

Sergeant King testified that, when he approached Appellant's vehicle, he saw Appellant "essentially sitting on the pavement outside the car with his upper part of his body leaning into the floor area in front of the driver's seat;" Appellant was using "some kind of object . . . [to] dig[] a hole . . . in the floorboard" of the vehicle. *Id.* at 29-31. Sergeant King testified that Appellant's actions were "unusual." *Id.* at 39.

Sergeant King spoke with Appellant and, during their interaction, Sergeant King suspected that Appellant was under the influence of a controlled substance. *Id.* at 35-36. As a result, Sergeant King had Appellant perform field sobriety tests, which Appellant failed. *See id.* at 49-52.

Sergeant King transported Appellant to a police substation, where Northwest Lancaster County Regional Police Officer Gavin Kline performed a drug influence evaluation upon Appellant. *Id.* at 33. Officer Kline, the department's drug recognition expert, concluded that Appellant was under the combined influence of a central nervous system stimulant and a narcotic

J-S67005-19

analgesic, which rendered Appellant incapable of safely driving.[1, 2]  *Id.* at 71 and 123.

At the conclusion of the trial, the trial court found Appellant guilty of driving under the influence of a drug or a combination of drugs to a degree which impaired his ability to safely drive, operate, or be in actual physical control of the movement of a vehicle (hereinafter "DUI").  *Id.* at 160; 75 Pa.C.S.A. § 3802(d)(2).  On February 25, 2019, the trial court sentenced Appellant to serve a term of 72 hours to six months in jail.  N.T. Trial, 2/25/19, at 160.

Appellant filed a timely notice of appeal.  He raises one claim to this Court:

> Did the [trial] court err in finding there was sufficient evidence to convict [Appellant] of [DUI] when the Commonwealth failed to produce sufficient evidence that the incident occurred on a highway or trafficway as contemplated by the Motor Vehicle Code and applicable case law?

Appellant's Brief at 5.

We review Appellant's sufficiency of the evidence challenge under the following standard:

_____

[1] Sergeant King also testified that, based upon his training, experience, and observations, Appellant was "under the influence of a drug or drugs which rendered him incapable of safely driving."  N.T. Trial, 2/25/19, at 55.

[2] Appellant refused to consent to a blood draw for purposes of drug testing.  N.T. Trial, 2/25/19, at 55.

- 4 -

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Vargas*, 108 A.3d 858, 867-868 (Pa. Super. 2014) (*en banc*), *quoting* *Commonwealth v. Brown*, 23 A.3d 544, 559–560 (Pa. Super. 2011) (*en banc*).

On appeal, Appellant does not claim that the Commonwealth failed to prove that he was operating the motor vehicle or that he was under the influence of a controlled substance to the extent that it impaired his ability to safely operate the motor vehicle. Instead, Appellant's sole claim on appeal is that the evidence was insufficient to support his DUI conviction, as the Commonwealth failed to prove that his vehicle was located on a "highway" or "trafficway." Appellant's Brief at 10-13. This claim fails.

Appellant was convicted of DUI under 75 Pa.C.S.A. § 3802(d)(2). This section states:

**(d) Controlled substances.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

. . .

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

75 Pa.C.S.A. § 3101(b) modifies Section 3802(d)(2). In relevant part, Section 3101 provides:

**(a) General rule.**--Except as provided in subsection (b), the provisions of this part relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except where a different place is specifically referred to in a particular provision.

**(b) Serious traffic offenses.**--The provisions of . . . Chapter 38 (relating to driving after imbibing alcohol or utilizing drugs) shall apply upon highways and trafficways throughout this Commonwealth.

75 Pa.C.S.A. § 3101.

The Vehicle Code defines the terms "highways" and "trafficways" in the following manner:

**"Highway."** The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

. . .

> **"Trafficway."** The entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom.

75 Pa.C.S.A. § 102.

Consistent with the above, we have held that "[a]n essential element of [DUI] is that a vehicle be operated on a highway or trafficway." *Commonwealth v. Cozzone*, 593 A.2d 860, 861 (Pa. Super. 1991). Here, Appellant was operating his vehicle in the parking lot of a strip mall. There is no evidence that the parking lot was "publicly maintained." *See* 75 Pa.C.S.A. § 102. As such, there is no evidence that the parking lot was a "highway," as that term is defined in 75 Pa.C.S.A. § 102. We must therefore determine whether there was sufficient evidence to prove that the parking lot was a "trafficway." This determination centers upon whether the parking lot was "open to the public for purposes of vehicular travel as a matter of right or custom." *Id.*

Viewing the evidence in the light most favorable to the Commonwealth, it is clear that the parking lot in question was "open to the public for purposes of vehicular travel as a matter of right or custom." *See id.* To be sure, the evidence established that: the parking lot was part of a strip mall, named the Shops at Kissel Hill; the parking lot was used, at least, by customers of the Wine and Spirits Store; and, the parking lot was in the same strip mall that housed a Target store. N.T. Trial, 2/25/19, at 5, 19-20, and 28-29. As this Court has expressly held: "[where] the evidence establishe[s] that [the defendant] drove in a parking lot of a mall that is open to the public for

shopping[,] . . . there [is] sufficient evidence for the [factfinder] to conclude that the parking area [is] a trafficway." ***Commonwealth v. Proctor***, 625 A.2d 1221, 1224 (Pa. Super. 1993); ***see also Commonwealth v. Wilson***, 553 A.2d 452, 454 (Pa. Super. 1989) (holding that an Elks Club parking lot was a "trafficway" and was "open to the public by custom even though the lot was marked private by a sign;" the Court reasoned: "[e]ven if restricted by signs, if a parking lot is used by members of the public, it is a trafficway for purposes of 75 Pa.C.S.A. § 3101"); ***Commonwealth v. Cameron***, 668 A.2d 1163 (Pa. Super. 1995) (holding: the evidence was sufficient to prove that the parking lot of an 11-story apartment building was "open to the public" and a "trafficway" – even though the lot was "posted as restricted for tenants only, each [tenant] had an assigned parking place, and there was only one entrance" – because the parking lot was "located adjacent to an [11-]story apartment building and, thus, accommodated a "sufficient number of users"); ***Commonwealth v. Ansell***, 143 A.3d 944, 949 (Pa. Super. 2016) ("[o]ur case law holds that the public use component of section 102 of the Motor Vehicle Code can be met despite certain restrictions on access to the regulated area so long as the record establishes that a sufficient number of drivers use the roadway for vehicular traffic"); ***but see Commonwealth v. Owen***, 580 A.2d 412 (Pa. Super. 1990) (holding that the Commonwealth failed to make a *prima facie* showing that a parking lot, in which the defendant was caught driving under the influence, was "open to the public" and a trafficway because, during the *habeas* proceeding, the Commonwealth relied on legal argument and,

- 8 -

thus, produced "no competent evidence concerning the nature of the parking lot").

In this case, the Commonwealth produced evidence that Appellant was operating his vehicle "in a parking lot of a mall that [was] open to the public for shopping." *See Proctor*, 625 A.2d at 1224. Thus, "there was sufficient evidence for the [factfinder] to conclude that the parking area was a trafficway," as that term is defined in the Vehicle Code. Appellant's claim to the contrary fails.

Judgment of sentence affirmed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2020